**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Joseph HENDRICKS,
Defendant-Appellant.**

**No. 45825.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 8, 1984.

Lee T. Lawless, Asst. Public Defender, St. Louis, Stanley D. Schnaare, Anderson, Hammon & Dieffenbach, Hillsboro, for defendant-appellant.

John Ashcroft, Atty. Gen., Jefferson City, Edward Rogers, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

KELLY, Judge.

Defendant was convicted of ten counts of first degree robbery, a violation of § 569.-020 RSMo 1978. He was sentenced as a prior offender to consecutive terms of twenty years imprisonment on each count. He appeals raising five contentions of error. We find them all to be without merit and affirm the conviction.

Defendant along with four others, Nick Connell, Kathleen Bray, Ricky Mills and Austin Gamble were charged with the robbery of ten individuals over a period of four days in four separate incidents in South St. Louis and South St. Louis County.

There was evidence from which the jury could have found that at approximately 1:00 a.m. on June 17, 1981, Nick Connell entered the Country Palace Tavern in South St. Louis. Shortly thereafter, defendant, Ricky Mills, and Austin Gamble entered with their faces covered by stocking masks and announced a hold-up to those present. Ricky Mills was armed with a .38 caliber revolver. Two purses, money from the cash register, a wrist watch and an unusual decanter of Jack Daniels were taken. The robbers left the area in a car driven by Kathleen Bray.

Approximately an hour later that evening, defendant and the others were in the vicinity of Chippewa and California where they spotted a man with two women companions. Austin Gamble, defendant and Ricky Mills donned masks and robbed the man of his watch and $100.00 and took the purses of the two women.

Two days later, on June 19, at approximately 1:30 p.m., the defendant and the same four companions drove into the park-

ing lot of a Stop-and-Go convenience store in South St. Louis. Defendant, armed with the .38 caliber revolver, Nick Connell and Austin Gamble all with their faces covered, entered the store and robbed two clerks of their wallets.

The final robbery took place at approximately midnight on June 20, 1981. Defendant and his companions were driving southbound on Interstate 55 when the car they were in intentionally struck a black Cadillac containing a man and two women. Both cars pulled over onto the shoulder of the road. The men including defendant got out of the car pulling masks over their faces and approached the Cadillac. Defendant was armed with the .38 caliber revolver. The man was robbed of his wallet; one woman was robbed of her purse and the other woman of two diamond rings. As defendant leaned into the car, one of the women burned him on his chin with a cigarette.

At trial, none of the victims were able to identify defendant because of the masks. Both Kathleen Bray and Nick Connell, two of the participants testified for the state and recounted defendant's role in these activities. A wallet belonging to one of the Stop-and-Go victims was found in a sewer across from Ricky Mill's house. In Austin Gamble's house, the police found a watch taken from one of the victims at the Country Palace Tavern and an empty decanter bottle of Jack Daniels, similar to the one taken in that robbery.

When defendant was arrested, he had what appeared to be a burn mark on his chin. He was advised of his rights and taken to an interrogation room. As he was looking out the window, he stated, "I'll never get out there again." Defendant was thereafter taken to a pre-trial line-up. A police officer testified that as he was walking down a gangway he stated to one of his co-defendants, "we were snitched out because no one knows me on the southside." Defendant's defense was alibi.

Defendant in his first point on appeal, asserts the trial court erred in overruling his objection to the voir dire of the jury panel in which the assistant prosecuting attorney defined reasonable doubt in the following terms: "The law does not say that I have to convince you beyond any and all doubt or beyond a shadow of a doubt ... [I]t says that I have to prove to you beyond a reasonable doubt, not beyond a shadow of a doubt, not beyond any and all doubt."

The defense attorney timely objected to these remarks. The Missouri Approved Instructions preclude both court and counsel from defining or elaborating upon the terms reasonable doubt. MAI–CR2d 2.20, Notes On Use: *State v. Williams*, 659 S.W.2d 778, 781 (Mo. banc 1983); *State v. Sanders*, 541 S.W.2d 782, 784 (Mo.App. 1976).[1]

The complained of remarks here defined reasonable doubt in violation of the instruction. However, this court has consistently held that even though such comments are improper, they do not constitute prejudicial error because they are not legally incorrect. *State v. Sincup*, 674 S.W.2d 689 (Mo.App.E.D.1984); *State v. Ball*, 622 S.W.2d 285, 288 (Mo.App.1981); *State v. Henderson*, 547 S.W.2d 141, 143–44 (Mo.App.1976). *See State v. Carmack*, 633 S.W.2d 218, 219–20 (Mo.App.1982); *State v. Hurst*, 612 S.W.2d 846, 852 (Mo.App.1981). We believe what was said in *State v. Ball*, 622 S.W.2d at 288 is appropriate:

The prosecutor's statements which indicated that reasonable doubt was not "beyond any and all doubt" or "slight doubt" or "beyond a shadow of a doubt" were not legally incorrect. (citation omitted) Although we condemn the practice and admonish all prosecutors and defense counsel not to inform the jury what the law is or what counsel believes the law to be, we find nothing in

---

1. An instruction defining reasonable doubt is mandatory as of July 1, 1984. § 546.070(4)

(Cum.Supp.1983, p. 1647).

the remarks which might have injured defendant's cause or prejudiced his case.

We feel constrained to follow the cited cases and find no merit to defendant's first point.

In defendant's second point, he asserts:

"The trial court erred in failing to instruct the jury as to robbery in the first degree on each of the ten counts. Failure to so instruct the jury deprived the defendant of his right to a fair trial by subjecting him to consideration by the jury of activities with which he was not charged."

In defendant's Motion for New Trial, he alleged the court erred in submitting Instruction No. 6, defining first degree robbery because it was inaccurate, and misleading. He also alleged it was error to give the ten verdict-directing instructions because they allowed the jury to consider the acts of others and he was thereby denied a fair trial. He further asserted the court erred in submitting the verdict-directing instructions because there was insufficient "evidence of the allegations contained in said instructions to submit said instructions to the jury."

The following is one of the instructions submitted to the jury:

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about June 17, 1981, in the City of St. Louis, State of Missouri, certain persons with the aid or attempted aid of the defendant committed the offense of robbery in the first degree of Madlin Handley, and

Second, that the defendant, either before or during the commission of the offense of robbery in the first degree with the purpose of promoting its commission, aided such other persons in committing that offense,

then you will find the defendant guilty under Count II of robbery in the first degree.

First degree robbery was not defined in this verdict-directing instruction but was defined in Instruction No. 6.

■ On appeal, defendant argues that the court erred in submitting the verdict-directors modeled after MAI–CR2d 2.12 and instead MAI–CR2d 23.02 (first degree robbery) should have been given. This case was tried on April 27, 1982. Hence, this version of MAI–CR2d 2.10 and 2.12 effective January 1, 1979 was applicable. The comments to MAI–CR2d 2.10 state that MAI–CR2d 2.10 and 2.12 "must be given whether requested or not when there is any evidence, that defendant acted with others, either as an active participant or one who aided, agreed to aid or attempted to aid another in planning, committing or attempting to commit an offense." *State v. Hastings,* 628 S.W.2d 678, 681 (Mo.App. 1982). Here there was ample evidence defendant acted with others and thus the giving of MAI–CR2d 2.12 was mandatory. Only the first and second paragraphs of MAI–CR2d 2.12 are required to be given in the present case. Neither paragraph requires the individual elements of the offense to be set forth—the first paragraph merely directs the offense to be "briefly identified." However, MAI–CR2d 2.04 states that a verdict-directing instruction must contain all essential elements of the offense. Thus there is a conflict between MAI–CR2d 2.12 and the Notes On Use in MAI–CR2d 2.04 which has long been recognized.[2] See *State v. Clark,* 607 S.W.2d 817, 820 (Mo.App.1980).

When a verdict-directing instruction modeled after MAI–CR2d 2.12 also includes the elements of the offense as in *State v. Clark,* 607 S.W.2d 817, 820 (Mo.App.1980) no prejudicial error has been found. The present case is the opposite situation and we find no prejudicial error. The verdict-directing instructions accurately tracked MAI–CR2d 2.12. The jury was properly instructed as to the law. Instruction No. 6 accurately defined robbery in the first degree.

---

**2.** This conflict has been eliminated by changes to MAI–CR2d 2.12 effective January 1, 1983.

All essential elements of the offense must now be set forth in MAI–CR2d 2.12.

■ Defendant also alleges that he was prejudiced by the use of MAI–CR2d 2.12 (acting with others) because it was inconsistent with the information and hindered his trial preparation. There is no merit to this point. Each count of the substitute information charged, "Kathleen Bray, Joseph Hendricks, Ricky Mills and Austin Gamble, acting with another . . . committed the Class A felony of robbery in the first degree . . . ."

■ In defendant's third point, he asserts the trial court erred in overruling his motion to suppress the statements he made while in police custody because they were involuntary and were made in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A hearing on defendant's motion to suppress was held after which the trial court denied the motion. The evidence established that defendant was informed of his *Miranda* rights after he was taken into custody. He declined to make a statement. Thereafter, while waiting in the interrogation room and gazing out a window, defendant stated in the presence of a police officer, "I'll never get out there again." The second statement was made to a co-defendant as they were walking down a gangway coming from a line-up and overheard by an officer standing nearby to the effect that: "We must have been snitched out because no one knows me on the southside."

In oral argument, defendant's attorney conceded that there was no interrogation by police as to the first statement. Neither is there any evidence of interrogation by the police as to the second statement. In the absence of interrogation by the government or its agents, defendant's sixth amendment rights were not violated. *State v. Holt,* 592 S.W.2d 759, 770 (Mo. banc 1980).

■ In defendant's fourth point, he contends the trial court erred in finding that he was a prior offender because his 1969 conviction in St. Louis County for murder was "never made a part of the evidence" in the case. Section 490.130 RSMo 1978 provides that certified copies of court proceedings of any court in the state of Missouri shall be received as evidence of the acts or proceedings of such court.

At the hearing on defendant's prior offender status the prosecutor announced that he had a certified copy of defendant's 1969 St. Louis County sentence and judgment for first degree murder and a certified copy of the transcript of defendant's serial record from the Missouri Department of Corrections. The judge overruled defendant's objection to the documents and stated the certified copy of the St. Louis County judgment and the Department of Corrections record are admitted into evidence. The court thereafter found beyond a reasonable doubt that defendant was a prior offender.

The exhibits have been filed with this court. The sentence and judgment is properly certified. We can find no basis for holding the trial court erred by receiving certified copy of the sentence and judgment into evidence.

In his final point, defendant contends the trial court erred in refusing his instructions on the lesser included offense of robbery in the second degree.

■ Second degree robbery is a lesser included offense of robbery in the first degree. The trial court is required to instruct the jury on all lesser included offenses supported by the evidence. *State v. Smith,* 592 S.W.2d 165 (Mo. banc 1979). "[B]ut whether an instruction should be given on a lesser included offense depends upon whether there are facts in evidence sufficient to arguably show a lack of an essential element of the higher degree of the offense." *State v. Harris,* 598 S.W.2d 200, 203 (Mo.App.1980).

■ Defendant would only have been entitled to an instruction on second degree robbery as to a particular count if there was evidence as to that count that neither defendant nor another participant had been armed with a deadly weapon. However, the state's evidence established that in each of the robberies, either defendant or one of

the other participants was armed. Even defendant's evidence established that a weapon was used in each of the robberies. See *State v. Hampton*, 648 S.W.2d 162 (Mo.App.1983); *State v. Scott*, 647 S.W.2d 601, 611 (Mo.App.1983). There is no merit to this point.

Affirmed.

PUDLOWSKI, P.J., and SMITH, J., concur.