**STATE of Missouri,
Plaintiff/Respondent,**

v.

**Calvin E. ROBINSON,
Defendant/Appellant.**

No. WD 35908.

Missouri Court of Appeals,
Western District.

July 2, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled
and Denied Aug. 27, 1985.

William Shull (argued), Fredrich J. Cruse, Hannibal, Mo., for defendant/appellant.

John Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff/respondent.

Before LOWENSTEIN, P.J., and NUGENT and BERREY, JJ.

NUGENT, Judge.

Defendant Calvin E. Robinson, appeals his conviction for the Class C felony of stealing in violation of § 570.030.[1] He raises four points on appeal: First, delay both before the filing of the information and after arraignment. Second, the improper conduct of the prosecuting attorney during the trial. Third, error in admission of evidence and in permitting certain prosecution argument. Finally, error in giving the instruction on accountability, an improper modification of MAI CR2d 2.12. We affirm the judgment.

On March 9, 1981, two unidentified men came to the rural Shelby County home of 77-year old Bert Bower. He testified that the two men posed as representatives of a lightning rod company and said that, if he would give to them a $1,200 check, in return he would receive a six to eight thousand dollar rebate from the company. Relying upon their representations, Mr. Bower gave the two men a check bearing only his signature, leaving blank the date, amount and the name of the payee. In Mr. Bower's presence, one of the men then filled in the amount of $1,200 and the defendant's name, Clavin Robinson, misspelling the name. Mr. Bower followed the men out and saw a third unidentified person sitting in their car.

After they had departed, Mr. Bower drove the five miles to the Citizen's Bank of Shelbyville in "ten minutes or less." As Mr. Bower was endorsing another check, defendant Robinson entered the bank carrying the $1,200 check and presented it to the teller. Mr. Bower determined that the check was his and told the teller not to cash it. The defendant said to Mr. Bower that "[they] had been out to the house and done some work and [that Mr. Bower's] brother was there and give [sic] them this check for the work they'd done out there." Mr. Bower told the defendant that his brother had not been at his house and that he was the one who had given the check. He retrieved the check from the defendant and headed for the sheriff's office. Mr. Robinson departed.

The prosecution of defendant began with the filing of a complaint and his arrest on April 8, 1983. On April 20, the preliminary hearing was held, and on May 12, 1983, the information was filed and the defendant arraigned. Between May 12 and November 23, 1983, defendant asked for and obtained three continuances. In the period from May, 1983 to January, 1984, defendant had three different attorneys. The prosecution sought a trial setting on May 12 and again on November 9, 1983. On defendant's applications for change of ven-

---

**1.** All sectional references are to Revised Statutes of Missouri unless otherwise indicated.

ue and change of judge, his case was transferred to Macon County. On February 3, 1984, defendant filed two motions to dismiss, one for failure to file the information in a timely manner and the other for failure to grant a speedy trial. The case was tried on February 6, 1984. Immediately after the trial began, defendant renewed his motions to dismiss, but both were denied. At the close of the State's case, the court denied defendant's motion for acquittal. Defendant offered no evidence.

During the preparation of jury instructions, defendant prevailed upon the court to modify MAI–CR2d 2.12, the verdict director, to add the words "before or during" to reflect the meaning of § 562.041 regarding responsibility for conduct of another. The phrase "before or during" was not included in the approved instruction then in effect.

## I. *Delay of Prosecution*

Defendant's first point is that the trial court erred in overruling his motions to dismiss for pre-information and post-arraignment delay which prejudiced his constitutional rights in that he was unable properly to prepare his defense. He asserts that he was deprived of his Fifth and Sixth Amendment rights in that he was not charged until April 8, 1983, for a March 9, 1981, offense and in that he did not get a trial until February 6, 1984. He also claims that he was not given a trial within 180 days in violation of § 545.780.

### A. *Pre-Accusation Delay*

■ If a delay occurs in the pre-accusation stage, the defendant must look to the protections afforded by the statutes of limitation and by the Fifth Amendment's Due Process Clause. *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *Dillingham v. United States*, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 405 (1975); *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Barket*, 530 F.2d 181 (8th Cir.1975), *cert. denied*, 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 282 (1976); *State v. Holmes*, 643 S.W.2d 282, 285 (Mo.App.1982). In *Marion* the Court

stated at 464 that "the applicable statute of limitations ... is ... the primary guarantee against bringing overly stale criminal charges." The Court also recognized that the statute of limitations does not fully define a defendant's right to be speedily accused and that governmental pre-prosecution delay may violate a defendant's right to due process under the Fifth Amendment. Therefore, a statute of limitations, even though it has not yet expired, does not automatically foreclose a defendant's assertion of prejudice from pre-accusation delay.

■ The Due Process Clause requires dismissal of defendant's case if he shows at trial that pre-indictment delay caused substantial prejudice to his right to a fair trial *and* that the delay was an intentional device to gain tactical advantage over the accused. *United States v. Marion* at 324, 92 S.Ct. at 465; *State v. Scott*, 621 S.W.2d 915, 917 (Mo.1981); *State v. Waselewski*, 674 S.W.2d 177, 178–79 (Mo.App.1984). Although proof of prejudice is generally necessary, by itself it is not sufficient to support a due process claim. Any due process inquiry must consider the reasons for the delay as well as the prejudice to the accused. *United States v. Lovasco* at 790, 97 S.Ct. at 2049. Necessarily, the reasonableness of the delay must be balanced against any resulting prejudice to the defendant. The test for determining prejudicial impact is whether the delay has impaired the defendant's ability to defend himself. *United States v. Barket* at 193. In *Barket*, the Eighth Circuit said at 193:

A test for judging the reasonableness of pre-indictment delay comparable to that for assessing whether the defendant was prejudiced by the delay has, however, not yet been clearly developed. Lacking a predetermined standard, we employ a "delicate judgment" based upon the circumstances of each case, *United States v. Marion, supra,* 404 U.S. at 325, [92 S.Ct. at 466] ... balancing a combination of factors such as those employed in *Barker v. Wingo,* 407 U.S. 514 [92 S.Ct. 2182, 33 L.Ed.2d 101] ... (1972), for as-

sessing the impact of the denial of speedy trial after arrest.

Finally, not every "delay-caused detriment to a defendant's case should abort a criminal prosecution." *United States v. Marion* at 324–25, 92 S.Ct. at 465–466. Due process claims of pre-accusation delay are to be scrutinized closely for actual prejudice and should not be loosely interpreted. *United States v. Barket* at 196.

■ Accordingly, in this case we see no error or violation of defendant's constitutional rights in the court's denial of defendant's motion to dismiss for prejudice for pre-information delay. The crime was committed on March 9, 1981, and the defendant was charged April 8, 1983. Section 556.-036.2(1), the three-year statute of limitations for a felony, was applicable, and the twenty-five month delay was within that limit. Moreover, defendant has not adequately demonstrated that the delay violated the Due Process Clause. He contends that he was prejudiced by the fact that one witness, Owens, was unavailable for trial, but he failed to show what Owens would have said or why he was unavailable. Defendant has failed to show how he was prejudiced. Further scrutinizing defendant's claim, we note that no evidence or explanation of the reason for the delay appears in the record. The state gave no explanation for the delay, and the defendant made no showing of purposeful delay of his arrest to gain a tactical advantage. Here we find no evidence of substantial prejudice to justify dismissal.

### B. *Post-Accusation Delay*

Defendant next contends that he was denied his constitutional right to a speedy trial guarantied by the Sixth Amendment and by Art. I, § 18(a), of the Missouri Constitution. He further alleges violation of Missouri's Speedy Trial Act, § 545.780, which requires that a trial must begin within 180 days of arraignment. On February 3, 1984, defendant filed a motion to dismiss asserting violation of his constitutional right to a speedy trial. On February 6,

1984, the motion was denied. We deal first with the constitutional issues.

■ Post-accusation delay entitles a defendant to the protections of the Sixth Amendment. This limitation arises from the wording of the amendment which extends its protection only to "the accused" in a criminal prosecution. Defendant's entitlement to the protection of the Sixth Amendment depends upon when he became "an accused." The rule now is that the time for purposes of speedy trial under the Sixth Amendment begins to run from the time of the indictment or information or an arrest, whichever occurs first. *United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971); *Dillingham v. United States*, 423 U.S. 64, 65, 96 S.Ct. 303, 304, 46 L.Ed.2d 205 (1975); *State v. Holmes*, 643 S.W.2d 282, 285 (Mo. App.1982).

■ We said in *State v. Holmes* at 286 that in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Court at 530–32, 92 S.Ct. at 2191–2193 laid down the guiding concepts by which to determine Sixth Amendment rights to a speedy trial. The Court decided that a rigid formula would not be proper but rather each case should be submitted to a sensitive ad hoc balancing test taking into consideration the following factors: (1) the length of pretrial delay; (2) the reasons for the delay; (3) whether defendant has asserted his right to a speedy trial; and (4) whether the delay resulted in prejudice to the defendant.

We now apply this four-prong test to the facts of this case.

### 1. *Length of Pretrial Delay*

■ "The length of pretrial delay is 'to some extent a triggering mechanism', for, unless the delay is presumptively prejudicial, no further inquiry need be made into the other factors which complete the test." *State v. Harris*, 673 S.W.2d 490, 493 (Mo. App.1984), quoting *Barker v. Wingo* 407 U.S. at 530, 92 S.Ct. at 2192. Courts seem to be in general agreement that any delay of eight months or longer is presumptively

prejudicial. *See State v. Harris* at 493; *State v. Holmes* at 287. Defendant was arrested on April 8, 1983, and the trial was held on February 6, 1984. Almost ten months elapsed from the filing of the information until the trial began. We assume arguendo that this ten month delay was presumptively prejudicial.

## 2. *Reason for the Delay*

The burden is upon the state to accord an accused a speedy trial, and if there is delay it becomes incumbent upon the state to show reasons which justify that delay. If it appears that the delay resulted from a deliberate design on the part of the prosecution to gain an advantage over the defendant, that would be unjustified and would be counted heavily against the state. Mere negligence on the part of the prosecution is a more neutral factor but still "should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. *Barker v. Wingo*, 407 U.S. at p. 531 [92 S.Ct. at 2192]....

*State v. Holmes*, 643 S.W.2d 282, 287 (Mo. App.1982). The ten month delay was caused in large part by defendant's actions: his three motions for continuance and his applications for change of venue and change of judge, all of which were granted. In contrast, the prosecution twice requested a trial setting. Where the defendant "has contributed to the delay by asking for and being granted continuances, he cannot later successfully allege the denial of his constitutionally guaranteed right to a speedy trial." *State v. Harris* at 494; *State v. Campbell*, 612 S.W.2d 371, 374 (Mo.App.1980). The reasons for the delay in the instant case are weighed heavily against the defendant.

## 3. *Assertion of the Right to a Speedy Trial*

Defendant did not assert his right to a speedy trial until February 3, 1984, some ten months after the arrest and three days before trial. Before defendant asserted his right, at his request the court had granted three continuances. Defendant's actions contradict his present claim that his right to a speedy trial was violated. *State v. Harris* at 494; *State v. Powers*, 612 S.W.2d 8, 13 (Mo.App.1980); *State v. Santonelli*, 600 S.W.2d 205, 207 (Mo.App.1980).

## 4. *Prejudice to the Defendant*

The Supreme Court has declared that the fourth factor, prejudice to the defendant, should be assessed in the light of the following interests which the speedy trial right was designed to protect: (1) to prevent oppressive pretrial incarceration, (2) to minimize the creation of a state of anxiety in the defendant, and (3) to limit the possibility that the defense will be impaired. *Barker v. Wingo* 407 U.S. at 532, 92 S.Ct. at 2193. The most important factor to be considered in the speedy trial equation is whether the delay has impaired the defendant's ability to make a defense. *State v. Holmes* at 288. Defendant claims the delay made it nearly impossible to contact the witness he needed for his defense. Nothing in the record, however, shows how the delay precluded defendant from contacting his alleged witness or how he was prejudiced by the witness' unavailability. To require reversal, the claimed prejudice resulting from delay "must be actual prejudice apparent on the record or by reasonable inference—not speculative or possible prejudice." *State v. Buckles*, 636 S.W.2d 914, 920 (Mo.1982) (en banc). Defendant's assertion of prejudice does not meet that standard.

Having weighed the four factors set out in *Barker v. Wingo*, we conclude that defendant's Sixth Amendment right to a speedy trial has not been violated. What we say here applies as well to the speedy trial provision of Art. I, § 18(a) of the Misouri Constitution.

We next address defendant's contention that the trial court erred in overruling his motion to dismiss because the state denied him a speedy trial in violation of § 545.780, which requires that the defendant be brought to trial within 180 days.

Section 545.780 was repealed by H.C.S.S.C. S.S.B. 602, 82nd General Assembly, Second Session, 1984, effective June 7, 1984. The state argues, therefore, that § 545.780 is not applicable. The instant offense occurred before June 7, 1984, but we assume arguendo that the Speedy Trial Act is applicable to this case. Although the time for a speedy trial under the Sixth Amendment begins to run from the time of the indictment or information or arrest, whichever occurs first, the 180-day period under § 545.780 begins to run from the time of arraignment. *State v. Brooks*, 675 S.W.2d 53, 55 (Mo.App.1984).

Defendant was arraigned on May 12, 1983. He now argues that the delay between May 12 and December 16, 1983, exceeded 180 days. During that time, however, he filed four motions which delayed the trial. Where the defendant has contributed to the delay, he cannot assert a claim for violation of the Act.

## II. *Improper Conduct of Prosecutor*

Defendant next contends that his rights were prejudiced by the prosecutor's inflammatory and prejudicial statements to the jury. He cites four such instances, none of which we consider serious enough to require dismissal.

First, he argues that the prosecutor made an impermissible comment on the defendant's failure to testify when he stated to the jury, " 'Others unknown', well, now, that is a very correct statement, others unknown. The state don't [sic] know who those others were. And so I can't produce them, I can't prosecute, I can't bring them in here as witnesses. Others unknown. They can ask for subpoenas." At that point defendant objected and asked for a mistrial, which the trial court overruled and denied.

"If the accused shall not avail himself ... of his ... right to testify ... it shall not be ... referred to by any attorney in the case, nor considered by the court or jury before whom the trial takes place." Rule 27.05; § 546.270. Where a prosecu-

tor makes direct and certain reference to the accused's failure to testify, he commits reversible error. *State v. Rothaus*, 530 S.W.2d 235, 237 (Mo.1975) (en banc). "Crucial to the determination of whether the state has made a direct and certain reference to the accused's failure to testify is the use of these words ["accused" and "testify"] or their equivalent." *State v. Arnold*, 628 S.W.2d 665, 668 (Mo.1982). In the case of an indirect reference, a court must review the statement in its context and determine whether it "highlighted" or was "reasonably apt to have directed the jury's attention to the fact that he did not testify." *Id.* at 669. In this case, the prosecutor made no direct reference to the defendant's failure to testify nor can the statement be viewed as an indirect reference to alert the jury to that fact.

Second, defendant contends that in closing argument the prosecutor defined reasonable doubt when he said,

Reasonable Doubt. I'm not entitled to define for you people what reasonable doubt is and I'm not going to try. I am going to tell you this. You all know when you've got a doubt, okay? That's the first question. Do you have a doubt as to whether or not this defendant was guilty. If you don't have any doubts at all you don't have to decide whether or not they're reasonable ones, okay? So the first question, do you have a doubt, all right?

Defendant objected and the court warned the prosecutor to take care.

MAI–CR2d 2.20 precludes both the court and counsel from defining the term "reasonable doubt," but the courts have affirmed convictions even though the prosecutor transgressed in cases where defense counsel failed to object or where evidence of the defendant's guilt was strong enough to offset the objectionable argument. *State v. Williams*, 659 S.W.2d 778, 781–82 (Mo.1983) (en banc). Counsel's prerogatives do not include informing the jury about the law, but that general rule does not forbid all mention of law in the argument; counsel may discuss the law without

defining it. *State v. Jordan,* 646 S.W.2d 747, 751 (Mo.1983) (en banc).

■■■ Assuming that the prosecutor's remarks here could be construed as defining reasonable doubt, we have nevertheless, consistently held that, even though such comments are improper, they do not constitute prejudicial error if they are not legally incorrect and do not prejudice the defendant's case. *State v. Hendricks,* 675 S.W.2d 142, 144 (Mo.App.1984). Thus, discussion of reasonable doubt, while not condoned by our courts, is not necessarily prejudicial error. The comments by the prosecutor here were certainly harmless in the context of this case.

Third, defendant contends that the prosecuting attorney instructed the jury on a proposition of law when he stated to the jury,

> You are entitled to reason backwards as to what this man was—what his involvement was at the time the check was taken. You see the crime is complete when the check is taken, okay? And you are entitled to reason backwards as to what he was thinking and his involvement from the fact one there's a third party—

At that point, defendant objected that the prosecutor was instructing the jury on a proposition of law.

■■■ For more than sixty years the law in this state has been that counsel may not "state any law applicable to the case not embodied in the written instruction to the jury." *State v. Davis,* 284 Mo. 695, 225 S.W. 707, 710 (1920). That principle was reaffirmed in *State v. Jones,* 615 S.W.2d 416, 419 (Mo.1981). But no definitive statement of law was made in this case. The statement by the prosecutor was not the statement of a proposition of law. It was argument.

2. 562.041 Responsibility for the Conduct of Another.

 1 A person is criminally responsible for the conduct of another when

 . . . .

Fourth, defendant contends that in an attempt to inflame and prejudice the jury the prosecuting attorney attacked defense counsel during closing argument when he stated to the jury,

> So, lastly, I want you to recall Mr. Bower when he was on the stand during cross-examination, quite skillfully and artfully, if you will by defense counsel. The man is schooled in law, four years of college education and three years of law. And he put Mr. Bower on the stand and grilled him, okay, and he got the man confused, okay. And I submit that that fact in itself proved most conclusively that he was deceived. That's how they got to the man, an elderly gentleman, who if they talk fast enough and they make it convincing enough he will go along with it.

Defendant objected and asked for a mistrial. The court directed the jury to disregard any statement made about the defendant's counsel.

■■■ Every instance of improper argument by a prosecutor does not call for the drastic remedy of declaring a mistrial. *State v. Lacy,* 548 S.W.2d 251, 252 (Mo. App.1977). The statements made by the prosecutor about the defense counsel were not prejudicial and inflammatory. In any event, the court cured any prejudicial effect by ordering the jury to disregard any statement about defendant's counsel.

### III. *Error in Admitting Evidence and Permitting Argument*

Defendant's third contention is that the trial court erred in admitting evidence and permitting argument concerning events which occurred after the time when the two unidentified men received the check at Mr. Bower's house.

■■■ The defendant contends that § 562.041(2)[2], which was reflected in the jury instructions, applies only to accessories *before* the fact. Therefore, he argues,

 (2) Either before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense.

since the evidence shows only that defendant is an accessory *after* the fact, admission of evidence concerning events after the actual transfer of the check to establish defendant's guilt was improper. Defendant's interpretation of § 562.041(2) is wrong. Evidence which relates to events after the commission of a crime is routinely admitted to establish a defendant's guilt. *See State v. Mendoza,* 661 S.W.2d 672, 674 (Mo.App.1983).

We hold that the trial court did not err in admitting evidence relating to defendant's possession of the check, his attempt to cash it and his statement to Mr. Bower linking him to the two men who originally deceived Mr. Bower and procured the check. Those acts of defendant were relevant as circumstantial evidence of defendant's participation "before or during the commission of the offense charged" the kind of conduct described in § 562.041.

Defendant next argues that even though evidence was admitted to establish his participation in the crime, the evidence is not sufficient to establish his guilt. Since the State's case and defendant's conviction was based on circumstantial evidence, our standard of review is that set out in *State v. Franco,* 544 S.W.2d 533 (Mo.1976) (en banc):

> [W]hen the state's case rests upon circumstantial evidence, 'the facts and circumstances must be consistent with each other and with the hypothesis of defendant's guilt, and they must be inconsistent with his innocence and exclude every reasonable hypothesis of his innocence.' ... [and] the prevailing circumstantial evidence rule, is realistically tempered in its application since '[i]n a case involving circumstantial evidence the circumstances need not be absolutely conclusive of guilt*y,* [sic] and they need not demonstrate impossibility of innocence[;] ... the mere existence of other possible hypothesi*s* [sic] is not enough to remove the case from the jury.' [Citations omitted.]

*Id.* at 534–35.

To sustain the conviction, proof that defendant affirmatively participated in the stealing must be adduced. The trial court did not err in admitting into evidence facts that tend to establish defendant's affirmative participation in stealing, which may be shown by circumstantial evidence. In *State v. Mendoza,* at 674, we said, "Affirmative participation may be shown by circumstantial evidence, and proof of any form of affirmative participation in the crime is sufficient to support a conviction." Likewise, a defendant's knowledge and intent may be proved by circumstantial evidence.

The evidence herein clearly reveals facts and circumstances consistent with defendant's guilt and inconsistent with any reasonable theory of his innocence. The State adduced circumstantial evidence that raised a reasonable inference of defendant's active participation in the theft.

## IV. *Error in Instruction on Accountability*

Defendant's fourth and last point is that the trial court erred in giving the instruction on accountability. He contends that Instruction No. 7 was an improper modification of MAI CR2d 2.12 in that the rights of the defendant were prejudiced because Instruction No. 7 incorporated § 562.041's "before or during" language into MAI CR2d 2.12 to add the words "either before or during the commission of the offense." Instruction 7 was given by the trial court in the form requested by defendant, and at no time before submission of the case to the jury did defendant ever suggest that it was erroneous. Therefore, defendant cannot now complain that the court erred in using the modified instruction. If the court erred, the error was invited, and defendant may not now successfully complain. *In re Kinnick,* 621 S.W.2d 104, 105 (Mo.App.1981). *See also Gambrell v. Kansas City Chiefs Football Club,* 621 S.W.2d 382, 386 (Mo.App.1981) ("A party may not complain of alleged error which his own conduct creates"); *Burke v. Moyer,* 621 S.W.2d 75, 82 (Mo.

App.1981) ("A party cannot lead the court into error and then employ that error as a source of complaint").

 Even accepting arguendo the defendant's view that the prosecution had requested the modified instruction, the error would not require dismissal. Although a deviation from the MAI is presumptively prejudicial, *State v. Graves*, 588 S.W.2d 495 (Mo.1979) (en banc),

> not every deviation from an approved instruction ... requires reversal and although deviation should be discouraged in all cases, even when a deviation is error the question whether it is prejudicial error remains to be judicially determined.

*State v. Richardson*, 674 S.W.2d 161, 164 (Mo.App.1984) quoting *State v. Harris*, 564 S.W.2d 561, 573 (Mo.App.1978). We conclude that even if the insertion of the words "before or during" is a deviation and as such constituted error, the deviation was harmless error because the instruction did not mislead the jury in its deliberations on the law in this case.

For the foregoing reasons, we affirm the judgment of the trial court and sustain defendant's conviction.

All concur.